IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| HARVEY STEVENS, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:06-CV-40 |
| | ) | (Phillips) |
| LOCKHEED MARTIN ENERGY SYSTEMS, INC., | ) | |
| and BWXT Y-12, L.L.C., | ) | |
|     Defendants. | ) | |

**MEMORANDUM OPINION**

Plaintiff Harvey Stevens has sued his former employers, Lockheed Martin Energy Systems, Inc. (LMES) and BWXT Y-12, L.L.C. (BWXT), alleging "systemic racial discrimination in employment through discriminatory selection, promotion, compensation, and disciplinary policies, practices and procedures, discriminatory terms and conditions of employment, and the existence and perpetuation of a racially hostile work environment" in violation of 42 U.S.C. § 2000e, *et seq.,* (Title VII) and 42 U.S.C. § 1981 as amended. Defendant LMES has moved for summary judgment asserting that there are no genuine issues as to material facts, and that LMES is entitled to judgment as a matter of law on all of plaintiff's claims. For the reasons which follow, defendant's motion for summary judgment will be granted, and this action will be dismissed against LMES.

## Factual Background

Beginning April 1, 1984, pursuant to a contract with the Department of Energy, LMES managed, operated and maintained the Y-12 facility in Oak Ridge, Tennessee. LMES' contract for operating the Y-12 facility ended on October 31, 2000, and BWXT assumed management and operation on November 1, 2000. Stevens, an African-American male, was employed by LMES and the predecessor government contractors at Y-12 from July, 1965 until October 31, 2000. Stevens has been employed by BWXT from November 1, 2000 to the present.

Stevens is an hourly employee, and has worked as a machine operator at Y-12 since 1969. He is a member of the International Machinist and Aerospace Workers' Local 480, and the terms of his employment are governed by a contract between BWXT and the Atomic Trades and Labor Council. Stevens served as the chief steward in the union's leadership from 1985 to 1990.

Hostile Work Environment

Stevens claims he was subjected to a hostile work environment during his employment at LMES. Stevens testified that over the last five years at Y-12, he was not subjected to any racially derogatory remarks. That testimony stands in contrast to Stevens' statement that, within the last seven years, he was subjected to racial jokes, slurs and graffiti "every once in a while." However, Stevens remembers neither what happened during any specific incident nor the identity of the individual who purportedly engaged in the

-2-

conduct. These isolated incidents apparently did not affect Stevens' employment, as can be inferred from his following testimony:

> Q. What happened each time?
>
> A. I don't remember. I don't dwell on stuff like that. I don't have time for that.

Similarly, Stevens testified "... I'm not that sensitive where every time somebody say something," in response to questions concerning his hostile work environment claim. The record shows that Stevens did not complain to his supervisor about the incidents he claims created a hostile work environment. He did not register a complaint about the incidents with either Workforce Diversity or Labor Relations. Nor did Stevens make either a written or verbal complaint to the LMES Employee Concerns Response Program.

Failure to Promote

The record shows that Stevens did not apply for a promotion during the last three or four years LMES managed the Y-12 facility.

Unequal Discipline

Stevens also complains that he was subjected to unequal discipline on two occasions during his tenure with LMES. First, in 1999, Stevens worked the 7:00 a.m. to 3:30 p.m. shift. LMES' contract with the ATLC provided that each machinist was allotted thirty minutes for lunch. Because Stevens was away from work longer than the prescribed time, Mark Potter, Stevens' direct supervisor, gave him a coaching and counseling session in April 1999. Potter advised Stevens that a written warning would follow unless his lunch

-3-

breaks complied with the Union rule. However, Stevens never received a written reprimand. Because Stevens' wages and benefits were governed by the contract with the ATLC, Potter's coaching and counseling session did not adversely affect Stevens' wages or benefits. Nor did it adversely affect the job assignments made to him after the coaching and counseling session.

Stevens alleges that the coaching and counseling which he received is evidence of discrimination. He contends that other machinists working under Potter's supervision were not disciplined despite taking lunch breaks longer than the allotted time. After Stevens received the coaching and counseling, he complained to Potter that "everybody in the shop was doing the same thing I was doing, so I don't understand why the other machinists wasn't being talked to about it." The record shows that while other machinists were occasionally several minutes late from lunch, Stevens, by his own testimony, often returned to work fifty-five minutes late. Shortly thereafter, Potter, during a morning safety meeting, directed the remaining machinists to comply with the rules regarding lunch breaks.

Olga Henley, Manager of Employee Relations, conducted an investigation into Stevens' complaints about the lunch matter. She interviewed various employees and supervisors with knowledge about Stevens' allegations. Henley concluded that the other machinists were treated the same as Stevens.

Stevens also alleges that he was subjected to unequal discipline "two or three years ago" for "leaving the shop early." This complaint relates to several instances in 1996 when Stevens left his work area early to take a shower before leaving the Y-12 facility. The contract with the ATLC allowed certain machinists to leave their work station ten minutes before the end of the shift to shower and change clothes. On September 12, 1996, Stevens left his work station ten minutes earlier than the contract allowed to shower and change clothes, despite the fact he had been counseled against leaving his assigned work area early on June 25, 1996, and September 10, 1996. Stevens' conduct violated the ATLC contract, and he was disciplined in accordance with the Positive Discipline Policy by having his pay reduced an amount commensurate with the time he missed from work.

In accordance with the ATLC contract, Stevens challenged the pay reduction by filing a grievance. He pursued the matter through the third level of the grievance process, and his grievance was denied. Stevens and the ATLC appealed the dispute to arbitration, but subsequently withdraw the appeal on December 31, 1998.

Stevens EEOC Charge

On May 8, 2001, Stevens filed a charge of discrimination with the EEOC. The EEOC charge alleges only that BWXT denied Stevens retirement benefits because of his age. It does not mention racial harassment, racial discrimination, or the denial of promotions or training. Stevens did not file an EEOC charge against LMES complaining about any of the alleged unlawful conduct that forms the basis for his instant complaint.

LMES has moved for summary judgment asserting that Stevens' claims should be dismissed because he cannot establish a *prima facie* case on either his racial discrimination or hostile work environment claims; he did not apply for any promotions during the period LMES managed the Y-12 facility; he cannot show that the discipline administered to him in 1999 constituted an adverse employment action or that LMES' proffered reasons for disciplinary decisions were pretextual; his unequal compensation claim fails because the terms and conditions of his employment were governed by a union contract; his Title VII claim should be dismissed because he failed to file a charge with the Equal Employment Opportunity Commission (EEOC) alleging race discrimination; and his claim for disparate discipline in 1996 is barred by the applicable statute of limitations.

Plaintiff Harvey Stevens has responded in opposition, stating that the evidence in this case demonstrates that he was subjected to different terms and conditions of employment based upon his race, thus precluding summary judgment in favor of LMES.

### **Summary Judgment Standard**

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In ruling on a motion for summary judgment, the court views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). To withstand summary judgment, the

non-movant must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First Am. Bank,* 916 F.2d 337, 342 (6th Cir. 1990). A mere scintilla of evidence is insufficient; there must be evidence on which the jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

## **Analysis**

Stevens asserts two theories under which LMES violated Title VII and § 1981. First, Stevens contends he was subjected to a hostile work environment during his employment at LMES. Second, Stevens claims that while employed by LMES, he was subjected to unequal terms and conditions of employment and disparate disciplinary action.

The order, allocation, and standard of proof in Title VII and § 1981 cases is governed by the three-part analysis set forth in *McDonnell Douglas Corp. V. Green,* 411 U.S. 792 (1973); *Texas Dept. Of Comm. Affairs v. Burdine,* 450 U.S. 248 (1981); and *St. Mary's Honor Ctr v. Hicks,* 509 U.S. 502 (1993). *See also, Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir. 1992) (the same substantive analysis applies to Tile VII and § 1981 claims). Under this analytical framework, the plaintiff bears the initial burden of establishing a *prima facie* case of employment discrimination. *Burdine,* 450 U.S. at 252-53. If the plaintiff succeeds in proving a *prima facie* case, the burden shifts to the defendant to

articulate a legitimate, nondiscriminatory reason for the contested action. *Id.* Once the defendant satisfies this burden, the burden shifts back to the plaintiff to show that defendant's proffered reason is really a pretext for discrimination. *Id.* at 254-55. The plaintiff at all times bears the ultimate burden of persuasion that the employer's conduct was the product of intentional race discrimination. *Hicks,* 509 U.S. at 510-12.

Hostile Work Environment

Stevens contends he was subjected to a hostile work environment during his employment at LMES. In the Sixth Circuit, claims under 42 U.S.C. § 1981 require the same standard of proof to establish a *prima facie* case as a Title VII claim. *Newman v. Federal Express Corp.,* 226 F.3d 401, 406 (6th Cir. 2001). Title VII prohibits racial harassment that creates a hostile or abusive workplace. *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21 (1993); *Newman v. Federal Express Corp.,* 266 F.3d 401, 405 (6th Cir. 2001); *Hafford v. Seidner,* 183 F.3d 506, 512 (6th Cir. 1999). Under Title VII, a plaintiff establishes a *prima facie* case of hostile work environment based on race by demonstrating the following five elements: (1) he was a member of a protected class; (2) he was subjected to unwelcomed racial harassment; (3) the harassment was based on race; (4) the harassment had the effect of unreasonably interfering with plaintiff's work performance by creating an intimidating, hostile, or offensive work environment; and (5) the employer was liable for the harassment. *Hafford,* 183 F.3d at 512.

A hostile work environment occurs "when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter

-8-

the conditions of the victim's employment and create an abusive working environment." *Harris,* 510 U.S. at 21. In determining whether there was a hostile work environment, courts look to the "totality of the circumstances." *Faragher v. City of Boca Raton,* 524 U.S. 775, 787-88 (1998). "The conduct must be severe enough or pervasive enough to create an environment that a reasonable person would find hostile or abusive." *Bowman v. Shawnee State Univ.,* 220 F.3d 456, 463 (6th Cir. 2000). Appropriate factors for the court to consider when determining whether conduct is severe or pervasive enough to constitute a hostile work environment "include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* quoting *Harris,* 510 U.S. at 23. The Supreme Court has consistently held that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Newman,* 266 F.3d at 405, quoting *Faragher,* 524 U.S. at 788.

Stevens has not established that he was subjected to a hostile work environment while employed by LMES. Stevens testified that he was not subjected to any racially derogatory incidents or remarks during the preceding five years while working at LMES. Stevens did state in response to another question that he had been subjected to racial jokes, slurs, and graffiti "every once in a while" over the last seven years. However, Stevens was not able to describe any specific incident or disclose the identity of the individual who purportedly engaged in inappropriate conduct. His testimony lacks "specific facts" and "concrete evidence" to establish the existence of unwelcome racial harassment.

*See Wixon v. Dowagiac Nursing Home,* 87 F.3d 164, 171 (6th Cir. 1996) (holding that the plaintiff failed to create issues of fact by alleging numerous instances of disparate treatment and hostile work environment in general and conclusory terms with no reference to names, times and occasions).

Stevens also has not presented evidence showing that the alleged "harassment had the effect of unreasonably interfering with his work performance by creating an intimidating, hostile, or offensive work environment." *Newman v. Federal Express Corp.,* 266 F.3d 401, 405 (6th Cir. 2001). Stevens testified in his deposition that "I don't dwell on stuff like that" and "I'm not that sensitive ..." in response to questions about the incidents which he contends created the hostile work environment. His testimony demonstrates that the terms and conditions of his employment were not adversely affected. As stated above, Stevens has offered no specific examples of incidents which he contends created a hostile work environment. Moreover, Stevens failed to complain to his supervisor, Labor Relations, Workforce Diversity, or to the Employee Concerns Response Program about the incidents he alleges created a hostile environment. Absent notice, LMES was unable to investigate his allegations and take corrective action. Thus, his hostile environment claim fails as a matter of law, and summary judgment will be granted to LMES.

Failure to Promote

Because Stevens failed to provide evidence that he applied for a promotion during his last three or four years with LMES, he cannot establish a *prima facie* claim of

discrimination based on a failure to promote.  *See Nguyen v. City of Cleveland*, 229 F.3d 559, 563-64 (6th Cir. 2000) (summary judgment appropriate because plaintiff did not establish that he applied for the position).  Accordingly, LMES will be granted summary judgment on Stevens' claim for failure to promote.

Unequal Compensation

Inasmuch a the terms and conditions of Stevens' employment were governed by the ATLC contract, summary judgment will be granted to LMES on Stevens' disparate pay claim.

Unequal Discipline

Stevens contends that he was subjected to discriminatory discipline in 1999 for taking too long for lunch and, again, "two or three years ago" for "leaving the shop early."  To make out a *prima facie* case of disparate treatment, Stevens must establish that (1) he was subjected to an adverse employment action, and (2) similarly situated white employees were treated better.  *See Smith v. City of Salem,* 378 F.3d 566, 570 (6th Cir. 2004).  LMES asserts that Stevens cannot establish a *prima facie* case because he did not suffer an adverse employment action and because he cannot show that he was treated differently from similarly-situated employees.

An "adverse employment action" is a "materially adverse change in the terms or conditions of employment."  *Policastro v. Northwest Airlines*, 297 F.3d 535, 539 (6th Cir. 2002).  A materially adverse change might be indicated by a termination of employment,

a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, or other indices that might be unique to a particular situation. *Ford v. GMC,* 305 F.3d 545, 553 (6th Cir. 2002). A change in employment conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities. *Kocsis v. Multi-Care Mgmt, Inc.,* 97 F.3d 876, 886 (6th Cir. 1996). *De minimis* employment actions are not materially adverse and, thus, not actionable. *Bowman v. Shawnee State Univ.,* 220 F.3d 456, 461 (6th Cir. 2000).

Stevens must also show that there were non-minority employees who were treated better than he was and that they were "similarly-situated in all respects." *Mitchell v. Toledo Hosp.,* 064 F.2d 577, 583 (6th Cir. 1992). Similarly-situated means

> the individuals with whom the plaintiff seeks to compare his treatment must have dealt with the same supervisor, have been subject to the same standards, have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

*Id.*

The first incident about which Stevens complains occurred in April 1999 when he was coached and counseled for remaining in "the cafeteria during his shift because the work was slow." The union contract provided for a lunch period of thirty minutes for each machinist. While Stevens conceded that he often returned from lunch fifty-five minutes late, the non-minority machinists to whom he compares himself were only occasionally several minutes late. This disparity is significant and precludes a determination that the

-12-

non-minority machinists to whom Stevens compares himself were similarly-situated in all respects. In addition, the non-minority machinists, who returned from lunch much earlier than Stevens, also received coaching and counseling during a morning safety meeting when their supervisor directed them to comply with the applicable rules. Thus, Stevens has not established that he was treated differently than similarly-situated, non-minority machinists.

Moreover, the coaching and counseling session given to Stevens does not constitute an adverse employment action. *See Jones v. Butler Metro. Housing,* 2002 WL 1455329 (6th Cir. July 2, 2002) (unless a reprimand is accompanied by some other action, such as a demotion or salary reduction, it is not an adverse employment action).

The second incident about which Stevens complains occurred "two or three years ago" for "leaving the shop early."[1] Stevens stated that he "might leave the shop a few minutes early because it takes me longer to take a shower ...." However, Stevens did not know the identity of any other employees he claims left the shop early, but were not disciplined. Because Stevens does not know the employees to whom he attempts to compare himself, he cannot establish that the other employees were similarly-situated in all respects.

---

[1] LMES records indicate that the controversy developed after Stevens left his work station early on September 13, 1996.

Pay Reduction Claim

Stevens' claim arising out of his 1996 pay reduction is time barred. The instant action was filed December 28, 2001. In *Jones v. R.R. Donnelly & Sons Co.,* 541 U.S. 369 ((2004) the Supreme Court held that a four year statute of limitations applied to claims of race discrimination under 42 U.S.C. § 1981. The four-year statute is applicable to Stevens' § 1981 claim against LMES. Thus, Stevens' claim relating to the reduction of his pay in 1996 is time barred because such claim accrued more than four years before the filing of the instant suit.

Stevens' Title VII Claims

In his response to LMES' motion for summary judgment, Stevens abandons his claim brought under Title VII. Thus, LMES is entitled to summary judgment on Stevens' Title VII claim.

## Conclusion

For the reasons stated above, the court finds that defendant LMES is entitled to judgment as a matter of law on Stevens' claims of discrimination under Title VII and 42 U.S.C. § 1981. Accordingly, defendant's motion for summary judgment [Doc. 10] will be granted, and this action will be dismissed against LMES.

**ENTER:**

s/ Thomas W. Phillips
United States District Judge